ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

OCT 1 9 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

|  |  |
|---|---|
| U.S COMMODITY FUTURES TRADING COMMISSION, ) | CASE NO. |
|  ) |  **1 05 - C V 2709** |
| Plaintiff, ) | PLAINTIFF'S MOTION FOR AN *EX PARTE* STATUTORY |
|  ) | RESTRAINING ORDER TO |
| v. ) | FREEZE ASSETS, PRESERVE |
|  ) | BOOKS AND RECORDS, |
| LAKE DOW CAPITAL, LLC, aka ) | AUTHORIZE EXPEDITED |
| CLIFFORD, EDWARDS AND TY ) | DISCOVERY AND APPOINT A |
| EDWARDS, ) | TEMPORARY RECIEVER |
|  ) |  |
| Defendants ) |  |
|  ) |  |

## PLAINTIFF'S MOTION FOR *EX PARTE* STATUTORY RESTRAINING ORDER , EXPEDITED DISCOVERY AND A TEMPORARY RECEIVER

Comes now, plaintiff Commodity Futures Trading Commission, pursuant to Section 6c of the Commodity Exchange Act ("Act"), 7 U.S C. § 13a-1 (2002), as amended by the Rule 7 1 of the Local Rules of the United States District Court for the Northern District of Georgia and applies to this Court for an *ex parte* statutory restraining order, an order granting leave to take expedited discovery and an appointment of a temporary receiver, that contains the following·

    (a) an *ex parte* statutory restraining order prohibiting defendants from directly or indirectly, transferring, selling, alienating, liquidating,

3

encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of any funds, assets, or other property, wherever situated, including, but not limited to, all personal assets, assets held in corporate or partnership accounts in which defendants have an interest, assets held in any safe-deposit box or other storage facility, and assets held outside the United States, or causing such conduct to take place, except as may be otherwise ordered by the Court; and

(b) an *ex parte* statutory restraining order prohibiting defendants, their agents, attorneys, partners, servants, representatives. employees, attorneys, any person(s) acting or purporting to act for or on their behalf, from destroying or altering books. records, electronically stored data, including computers and computer data, or other documents of the defendants wherever they may be, and

(c) an order allowing the Commission to inspect immediately the books, records, and other documents of the defendants, their agents, attorneys. partners, servants, representatives, employees, any person(s) acting or purporting to act for or on their behalf, and corporate and partnership entities in which defendants have an interest, including, but not limited to, electronically stored data, tape recordings. and computer discs,

wherever they may be situated and whether they are in the person of the defendants or others, and to copy said documents, data and records, either on or off the premises where they may be situated; and

(d) an order granting leave to conduct expedited discovery and;

(e) an order appointing of a Temporary Receiver in order to administer this case by marshalling assets and records, locating and communicating with the customers of Defendants, performing a forensic accounting to determine the amounts due to each customer, and processing claims.

In support of this motion, the Commission respectfully refers the Court to the Commission's Memorandum of Points and Authorities in Support of Motion for *Ex Parte* Statutory Restraining Order to Freeze Assets, Preserve Books and Records and Authorize Expedited Discovery and the Commission's Memorandum in Support of Motion to Appoint a Temporary Receiver and exhibits filed therewith.

## CONCLUSION

Wherefore, the Commission respectfully requests that the Court enter an *ex parte* statutory restraining order 1) freezing defendants assets, 2) prohibiting defendants from destroying or altering any books, records or other documents: 3) allowing the Commission to inspect and copy immediately the books, records, and

other documents of the defendants; 3) granting leave to conduct expedited

discovery, and 4) appointing a temporary receiver.

Dated. October 19, 2005

Respectfully submitted,

Laura Bonander (Georgia Bar No (696541)
Assistant United States Attorney
600 U.S. Courthouse
75 Spring Street, S.W.
Suite 600
Atlanta, Georgia 30303
(404) 581-6000 telephone
(404) 581-6181 facsimile

Lael E. Campbell (*pro hac vice*)
Tracey Wingate (*pro hac vice*)
John Dunfee (*pro hac vice*)
U.S Commodity Futures Trading Commission
1155 21st Street NW
Washington, DC 20581
(202) 418-5000 telephone
(202) 418-5531 facsimile

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1B

I hereby certify that the foregoing PLAINTIFF'S MOTION FOR AN *EX PARTE* STATUTORY RESTRAINING ORDER TO FREEZE ASSETS, PRESERVE BOOKS AND RECORDS, AUTHORIZE EXPEDITIED DISCOVERY AND APPOINT TEMPORARY RECEIVER was prepared using Times New Roman, 14 point font

Lael E. Campbell



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COMMODITY FUTURES . 05 Civ _____
TRADING COMMISSION,

.

**1 05-CV 2709**

Plaintiff, Memorandum of Points and
Authorities in Support of
v Plaintiff's *Ex Parte* Motion for a
. Statutory Restraining Order, and
Motion for Preliminary Injunction
LAKE DOW CAPITAL, LLC a k.a . and Other Equitable Relief
CLIFFORD, EDWARDS AND
TAYLOR, LLC, and .
TY EDWARDS .

.

Defendants. .

## I.

## PRELIMINARY STATEMENT

There is substantial evidence to suggest that Defendants Lake Dow Capital,

LLC, a k a Clifford, Edwards and Taylor, LLC ("Lake Dow/CET") and Ty

Edwards ("Edwards") have engaged, are engaging, and may be about to engage in

acts and practices which constitute violations of Sections 4o(1) and 9(a)(4) of the

Commodity Exchange Act, as amended ("Act"), 7 U.S.C §§ 6o(1) and 13(a)(3)

(2002), and Commission Regulation 4.22(c), 17 C.F.R. § 4 22(c) (2004). Under

the Act, Lake Dow/CET is held liable for the acts and omissions of its agent

Edwards. *See* 7 U.S.C. § 2(a)(1)(B) (2002). Because Edwards was at all times the

controlling person of Lake Dow/CET, he is vicariously liable for each and every Lake Dow violation of Section 4o(1) and 9(a)(4) of the Act and Commission Regulation 4 22(c), pursuant to Section 13(b) of the Act, 7 U S C 13c(b) (2002)

Unless restrained and enjoined by this Court, the Defendants are likely to continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices, as more fully described below Thus, pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2002), the Commission brings this action to enjoin such acts and practices, prevent the dissipation of assets, and compel compliance with the provisions of the Act

The Commission submits this Memorandum of Points and Authorities, as well as the declarations and other exhibits attached hereto, in support of its motions for: (1) an *ex parte* statutory restraining order pursuant to Section 6c(a) of the Act, 7 U.S C §13a-1 (2002), freezing assets of Defendants Lake Dow/CET and Edwards to preserve investor funds, and (2) a statutory restraining order to preserve and permit inspection of Defendants' books and records, and (3) an order of preliminary injunction to enjoin Defendants from further violations of the Act.

# II.

## THE PARTIES

### The Plaintiff

The **Commodity Futures Trading Commission** ("CFTC" or "Commission") is an independent federal regulatory agency that is charged with the responsibility for administering and enforcing the provisions of the Act, as amended, 7 U.S C. §§ 1 *et seq.*, and the regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.*

### The Defendants

Defendant **Lake Dow Capital, LLC** is a business entity organized in Delaware, with a principal business address of 1265 Upchurch Road, McDonough, GA 30252. It previously was organized under the name Clifford, Edwards and Taylor, LLC on May 24. 2002. See Declaration of Mary E. Kaminski ("Kaminski Declaration"), App. 175. Clifford, Edwards and Taylor, LLC was registered with the Commission as a commodity trading advisor and a commodity pool operator beginning on July 17, 2002, and is currently registered under the name Lake Dow Capital LLC a.k.a Clifford Edwards and Taylor. Id. The entity officially changed its name in Delaware to Lake Dow on June 7, 2005 Id.

Defendant **Ty Edwards** ("Edwards") is an individual residing in McDonough, Georgia See NFA Registration and Certification of Lake Dow/CET

("NFA Registration"), App. 108. Edwards is the sole owner of Lake Dow/CET and is responsible for the trading of the funds operated by that entity Id. Edwards is registered with the CFTC as an associated person ("AP") of Lake Dow/CET and is a principal of that entity. Id. at 94

## III.

## STATEMENT OF FACTS

### Summary

From at least August 2002 through September 2005 (the "relevant time"), Lake Dow/CET, operating as a commodity pool operator ("CPO") and commodity trading adviser ("CTA"), and Edwards, have employed schemes to defraud or have engaged in practices which have operated as a fraud or deceit upon, actual and prospective commodity pool participants and clients by misrepresenting:

1.  the rates of return Lake Dow/CET generated for its pool participants, and

2  the value of assets it managed.

Lake Dow/CET and Edwards also employed schemes to defraud or have engaged in practices which have operated as a fraud or deceit upon, actual and prospective commodity pool participants and clients by failing to disclose to them:

1. the fact that the purported rates of return were based upon Edwards "eyeballing" and estimating Lake Dow/CET's trading results, and

2. the fact that Edwards was named as a defendant in a federal civil action filed by Plaintiff alleging fraud

Moreover, Edwards willfully concealed material information from the National Futures Association ("NFA"), and Lake Dow/CET failed to submit required annual reports to the NFA.

## Background Information

On or about July 17, 2002, Lake Dow/CET commenced operations as a CPO using the name CET NFA Registration, App 94 Prior to August 14, 2002, it created Aurora Investment Fund, LP ("Aurora Investment Fund" or "the Fund") a hedge fund and commodity pool. Kaminski Declaration, App. 183. According to solicitation materials provided to prospective investors, Aurora Investment Fund is a limited partnership whose general partner was CET. Id at 207. CET, in turn, was jointly owned by Aurora Capital Management, LLC, a privately held financial investment firm, and an individual by the name of Robert Taylor Id Aurora Capital Management, LLC was jointly owned by Edwards and another individual, Richard Clifford Id.

Edwards, individually, and by and through agents, solicited prospective pool participants and clients,. i e , investors, to become limited partners in the Aurora Investment Fund  According to the Aurora Fund Prospectus, individuals seeking to become limited partners were required to make a minimal capital contribution of $250,000. Investors were instructed to wire funds were to an account at People's Bank & Trust, "for further credit to" a second account, under the name of Aurora Investment Fund  Alternatively. investments made by check were to be made payable to Aurora Investment Fund and sent to Lake Dow/CET for deposit in the Aurora Investment Fund account. Id  at 175

From September 2002 to July 2005, at least 62 individuals and entities became limited partners in the Aurora Investment Fund.  Id. at 176. A substantial majority of the 62 individual investors committed funds from their personal Individual Retirement Accounts ("IRA accounts") to invest in the Aurora Investment Fund  Id

### Misrepresentations to Investors and Prospective Investors

Edwards knowingly made, or caused to be made, material misrepresentations to actual and prospective investors regarding the Aurora Investment Fund's trading performance and its assets under management.  One such example occurred recently in September of 2005, when Edwards presented an Aurora Investment Fund performance chart to a prospective institutional investor

The chart shows that the Fund has consistently generated positive returns, on an annual basis, for 2003 and 2004, and has not generated losses for any month in 2005  See Declaration of Kelly Perkins ("Perkins Declaration"), App. 4. In addition, account statements that Edwards prepared and mailed to investors for the period of January 1st to June 30, 2005. show a purported 13% positive rate of return for the Fund  Sutkus-Kiela Declaration, App  149.

Contrary to these representations, in September 2005, legal counsel for Edwards stated to at least one NFA representative that it was his understanding that Lake Dow/CET and Edwards had raised approximately $20 2 million from investors, but only $19.7 million was available to disburse back to investors  Id  at 147.   When NFA asked about the apparent shortfall between paid in principal and available funds, as well as the purported 13% positive rate of return for the Fund during the period of January 1st to June 30, Edwards counsel responded that he had no doubt that the reported performance was inaccurate.  Id

In a conference call with the same prospective institutional investor described above, Edwards represented that that in 2004 Lake Dow/CET managed approximately $100,000,000 in the Aurora Investment Fund, and that as of September 2005 it managed approximately $60,000,000.   Perkins declaration, App. 4  In actuality. the total amount of funds for the Aurora Investment Fund in September 2005 did not exceed $20,000,000. As of the date of this filing,  the

FCM holding the funds reports there is $18,414,106 90 in the Aurora Funds

Trading accounts, including individual IRA accounts.  Kaminski Declaration, App

176

**Material Omissions**

Edwards failed to disclose, or caused the failure to disclose, material facts to

actual and prospective Aurora Investment Fund   For example, materials provided

to actual and prospective investors failed to disclose the fact that he is a named

defendant in a pending Commission civil injunctive action alleging fraudulent

misrepresentations filed in July 2003   *See CFTC v  Risk Capital Trading Group,*

*Deron Baugh, Tyrone Edwards*, et  al, Case No  103 CV-2633  (N D  GA, 2003)

NFA Registration, App. 94.  This omission was willful as demonstrated in the

account opening documents signed by Edwards in July 2004, and submitted to a

futures commission merchant, where by Edwards falsely represented that he had

not been the subject of an investigation or proceeding by a futures or securities

regulatory or self-regulatory body.  Kaminski Declaration, App. 177

Edwards also failed to disclose to actual and prospective Aurora Investment

Fund participants and clients the fact that the rates of return, or performance

returns, Edwards attributed to the Aurora Investment Fund were not based upon

any actual financial documents, actual performance results, or analysis thereof

NFA Registration, App. 94.  Rather, as conceded by Edwards, the results reported

to actual and prospective participants and clients were simply based upon Edwards "eyeballing" the scant financial documents he had available to him in tandem with his best recollection of the amounts of funds participants and clients had invested Sutkus-Kiela Declaration, App 144 When specifically asked about the statements prepared by Edwards and distributed to Aurora Investment Fund investors showing profitable trading performance results of over 13% during the period of January 1st to June 30, 2005, Edwards admitted to NFA representatives that these statements were not derived from underlying trading or bank records but were based on his recollection of entry and exit prices. Edwards has no underlying documentation or support for the purported Aurora Investment Fund performance calculations. Id.

### Concealing Information from the NFA

The NFA, in furtherance of it's duties to conduct audits, requested Edwards to produce all of Lake Dow's books and records, all of the Aurora Investment Fund's books and documents including but not limited to those set forth in a September 6, 2005 letter issued by the NFA to Edwards. Id at 151-157 The NFA also requested from Edwards a "list of all pool participants in each pool operated by Lake Dow, including full name, address and phone number." Id.

NFA representatives on September 6, 2005, in furtherance of their duties, questioned Edwards about certain large deposits to Lake Dow/CET's

bank account. Edwards stated that these deposits were investments made by participants in the Aurora Investment Fund which were inadvertently sent to Lake Dow/CET's account instead of the Aurora Investment Fund account Id. at 145. However, during a later conversation on September 12, 2005, Edwards inconsistently stated that these deposits were capital contributions from another class of investors who were actually investing directly in Lake Dow/CET, claiming that the purpose of such investments were to provide funding for Lake Dow/CET and to "help grow the Aurora investment." Id Notwithstanding Edwards's evolving explanation regarding these funds, the owners of these funds understood that their funds would be combined and then invested in the Aurora Investment Fund See Declaration of Henry H. Godbee III, App. 30.

NFA representatives, in furtherance of their duties, asked Edwards how many individuals or entities had invested directly in Lake Dow/CET and requested that Edwards identify these individuals Edwards replied that he did not know and that he could not even estimate the number. Sutkus-Kiela Declaration, App. 145 He also stated that he was unaware of the identity of the investors. Id. Edwards stated that he would provide the NFA with the identities of the Lake Dow/CET investors and the size of their investments.

Beginning on September 6, 2005, Edwards willfully concealed from the NFA the identities of the Lake Dow/CET investors. For example Edwards was personally aware of a group of eleven investors in Lake Dow/CET. who collectively have invested $693,000 into Lake Dow/CET. [G] Mr. Henry "Buster" Godbee III, the certified financial planner for the eleven investors described above, stated that he had at least two conversations with Edwards regarding these investors and their direct investments into Lake Dow/CET Godbee Declaration, App 30. In fact, account statements issued to these eleven investors provide Ty Edwards's email address as the contact email. Sutkus Declaration, App 158-172 Moreover, account statements issued to Aurora Investment Fund investors. which Edwards admits he prepared, are essentially identical to account statements issued to the eleven Lake Dow/CET investors; same template, letterhead, font, and exact same percentage of returns The identical nature of the Aurora Investment Fund account statements and the Lake Dow/CET account statements strongly suggest that Edwards prepared these account statements to the eleven investors, as recently as June 30, 2005, and that Edwards was aware of their existence at least three months prior to failing to disclose their identity to the NFA. It was not until on or about October 7, 2005, that legal counsel for Edwards disclosed the identity

of these investors to the NFA. Edward's willful concealment of the identity of additional Lake Dow/CET investors for over 30 days is material to the NFA since it impeded the investigation to determine whether Edwards or Lake Dow/CET complied with the Commodity Exchange Act and Commission Regulations and whether Edwards or Lake Dow/CET misappropriated investor funds

### Edwards Did Not File Required Audit Reports

As a registered CPO, Lake Dow/CET is required to provide the NFA with an annual report pursuant to Commission Regulation 4 22(c) and (h), 17 C.F.R. § 4 22(c) and (h) (2004). As of the date of the filing of this Complaint, Lake Dow/CET has failed to provide its certified financial annual report to the NFA for at least 2003 and 2004. NFA Registration, App. 94. In fact, Edwards, his accountant, and his attorneys, acknowledged that many financial records required by Commission regulations were never prepared for Lake Dow/CET or the Aurora Investment Fund Id at 96.

### Edwards is Lake Dow/CET's Controlling Person

Edwards is Lake Dow/CET's controlling person During a conversation on September 6, 2005 between a NFA representative and Edwards, Edwards stated that he was the sole owner of Lake Dow/CET. Sutkus-Kiela Declaration, App, 145. Edwards is the only registered individual associated with Lake Dow in official

Commission registration documentation  Id. at 144  As Lake Dow/CET's

controlling person. Edwards has sole authority to make financial decisions relating

to the Aurora Investment Fund assets.  In Aurora Investment Fund offering

documents, Edwards is described as president and director of trading for the fund

NFA Registration, App. 94  In quarterly statements sent to investors Edwards is

identified as the contact person for investors wishing to redeem assets.  Sutkus-

Kiela Declaration, App. 159-172  In addition, Edwards is the sole signatory on

opening account documentation for all known Aurora Investment Fund trading

accounts  Kaminski Declaration, App. 177.

## IV.

## ARGUMENT

**A.    The Commodity Exchange Act Explicitly Authorizes the Court to Grant the Requested *Ex Parte* Statutory Relief**

Section 6c(a) of the Act, 7 U.S C  § 13a-1(a), empowers United States

district courts to grant restraining orders to freeze assets and prohibit any person

from destroying records or denying Commission officials access thereto [1]  Mindful

that notice "may result in the destruction of books and records and the dissipation

---

[1] Section 6c(a) of the Act, 7 U S C  § 13a-1(a), provides, in pertinent part  "[N]o restraining order (other than a restraining order which prohibits any person from destroying, altering, or disposing of, or refusing to permit authorized representatives of the Commission to inspect, when as requested, any books and records or other documents or which prohibits any person from withdrawing, transferring, removing, dissipating, or disposing of any funds, assets, or other property and other than an order appointing a temporary receiver to administer such restraining order to perform such other duties as the Court may consider appropriate) or injunction for violation of the provisions of this Act shall be issued *Ex parte* by said Court "

of customer funds," Congress authorized courts to issue such relief *ex parte* in order "to prevent possible removal or destruction of potential evidence or other impediments to legitimate law enforcement activities and to prohibit movement or disposal of funds, assets and other property which may be subject to lawful claims of customers." H.R Rep No 97-565, at 53-54, 93 (1982), *reprinted in* 1982 U S.C.C.A.N. 3871, 3902-03, 3942 Such relief will "ensure that the court maintains jurisdiction over [the defendants'] assets, in order to allow the court the opportunity to determine later whether disgorgement of illegally acquired profits is appropriate " *CFTC v Morgan, Harris & Scott, Ltd.*, 484 F Supp. 669, 679 (S.D.N Y. 1979). Under the statute, such restraining orders may be issued – even on an *ex parte* basis – whenever it appears that any person has engaged, is engaging or is about to engage in any act or practice constituting a violation of the Act *See, e g, CFTC v Clothier*, 788 F. Supp. 490 (D. Kan. 1992) As explained below, because Commission actions for injunctive relief are statutorily based, the requirements of Fed. R Civ P. 65 <u>do not</u> govern a request for a restraining order under Section 6c(a), 7 U S C § 13a-1(a)

An asset freeze is appropriate in this case because of the prima facie evidence of fraud and the fact that more than $18,000,000 in investor funds is involved. Those funds must be preserved where, as in this instance, the Commission seeks disgorgement and restitution *See CFTC v Morgan, Harris &*

*Scott, Ltd*, 484 F. Supp. 669, 678 (S.D.N.Y. 1979); *CFTC v Trending Cycles for Commodities, Inc*, [1980-1982 Transfer Binder] Comm. Fut. L. Rep (CCH) ¶ 21,013 at 23,970 (S.D Fla 1980), *citing CFTC v Muller*, 570 F 2d 1296, 1300 (5th Cir 1978). Moreover, a freeze also maintains the court's jurisdiction over the assets when presented with "[a] *prima facie* case of illegality " *Muller*, 570 F.2d at 1300.

An order prohibiting the destruction of records and granting the Commission access to inspect and copy records will allow the Commission to identify Defendants Lake Dow/CET's and Edwards's assets and determine the identity of any possible additional victims of their fraudulent solicitations and misappropriations. Given the ease of destroying documents, and the prima facie evidence that the Defendants have failed to produce documents to the NFA, and that the Defendants have concealed material information from the NFA relating to additional investors, Defendants records must be preserved at the very outset of litigation for there to be a meaningful opportunity to locate and recover customer funds and to determine the scope of the wrongs perpetrated by the defendants' fraudulent scheme. *See Clothier*, 788 F Supp. at 493. Such relief will "preserve the *status quo* while an investigation is conducted to clarify the sources of various funds." *CFTC v Morgan, Harris & Scott*, 484 F Supp. at 678. Moreover, a freeze also maintains the court's jurisdiction over the assets when disgorgement or

restitution is ordered  *See CFTC v  American Metal Exchange Corp* , 693 F  Supp.

168, 196 (D N J. 1988)  This relief is appropriate in this case as the evidence

demonstrates that Defendants have concealed material information from

authorities, and for several years have failed to produce records required by law to

be maintained and submitted to designated authorities.

## B.    Preliminary Injunctive Relief is Necessary and Appropriate

Unlike private actions for equitable relief, a Commission action for

injunctive relief is a creature of statute [2]  The injunctive relief contemplated in

Section 6c of the Act is remedial in nature and designed to prevent injury to the

public, afford redress to aggrieved persons, and deter future violations  Therefore,

restrictions ordinarily associated with private litigation, such as proof of irreparable

injury or inadequacy of other remedies, are inapplicable. *See CFTC v  IBS, Inc* ,

113 F. Supp  2d 830, 848 (W.D.N.C  2000), *aff'd, CFTC v  Kimberlynn Creek

Ranch, Inc* , 276 F.3d 187 (4th Cir. 2002); *CFTC v  Muller*, 570 F 2d 1296, 1300

(5th Cir  1978), *CFTC v  Hunt*, 591 F 2d 1211, 1220 (7th Cir  1979), *cert  denied*,

442 U S. 921 (1971), *SEC v  Princeton Economic Int'l* , 73 F. Supp. 2d 420, 422

(S.D.N.Y. 1999) (court's analysis applied to SEC and CFTC, co-plaintiffs that

were simultaneously moving for injunctions).  The Court has "broad discretion" to

---

[2] Section 6c of the Act, 7 U S C  § 13a-1, does not impose any time limit on a statutory restraining order, unlike Fed R Civ  Proc  65  Accordingly, there is no 10-day expiration period, and the restraining order remains in effect until further order of the Court

grant such statutory relief, including an asset freeze and temporary receivership, when presented with "[a] *prima facie* case of illegality." *Muller*, 570 F.2d at 1300, *SEC v First Fin Group*, 645 F.2d 429, 438 (5th Cir. 1981).

The Commission is entitled to injunctive relief upon a *prima facie* showing that a violation has occurred *SEC v Unique Financial Concepts, Inc*, 196 F.3d 1195, 1199 n.2 (11th Cir. 1999), *Kemp v Peterson*, 940 F.2d 110, 113 (4th Cir 1991); *Hunt*, 591 F.2d at 1220. Upon a showing that the Act has been violated, irreparable injury may be presumed. *See Gresham v Windrush Partners, Ltd*, 730 F.2d 1417, 1423 (11th Cir. 1984), *cert denied sub nom, Windrush Partners, Ltd v Metro Fair Housing Svcs*, 469 U.S. 882 (1984) (finding presumption of irreparable injury in statutory enforcement action), *SEC v R J Allen & Assoc, Inc*, 386 F Supp 866, 875 (S.D. Fla 1974) (no showing of irreparable injury required where statute requires only a proper showing of need for injunctive relief). Past misconduct is "highly suggestive of the likelihood of future violations." *See Hunt*, 591 F.2d at 1220, *CFTC v Heritage Cap Ad Svcs* [1982-1984 Transfer Binder] Comm. Fut. L. Rep ¶ 21,627 at 26,385 (N.D. Ill. Nov 8, 1982).

Here, the record of solicitation fraud, the failure to disclose material facts including prior fraud allegations by the Commission, the willful concealment of material information from the NFA, the failure to produce important books, records and other information about the more than 60 participants and clients that

have invested at least $18,000,000 with the Defendants provides ample evidence demonstrating a *prima facie* case of fraud and warranting preliminary injunctive relief against future violations [3]

## C. Defendants Lake Dow/CET and Edwards Have Defrauded and Deceived Actual and Prospective Pool Participants and Clients in Violation of Section 4o(1) of the Act

Defendants Lake Dow/CET, a registered CPO and CTA, and Edwards, a registered AP of Lake Dow/CET, and Lake Dow/CET's controlling person, have violated Sections 4o(1)(A) & (B) of the Act by misrepresenting the rates of return Lake Dow LLC generated for its pool participants and the value of assets it managed Lake Dow/CET and Edwards also violated Sections 4o(1)(A) & (B) of the Act by failing to disclose to actual and prospective commodity pool participants and clients the fact that the purported rates of return were based upon Edwards "eyeballing" and estimating Lake Dow's/CET's trading results, and the fact that Edwards was named as a defendant in an action filed by the Commission alleging fraud Edwards was an agent of Lake Dow/CET and acted within the scope of his employment As such, Lake Dow/CET is liable for Edwards' conduct pursuant to Section 2(a)(1)(B), 7 U.S.C. § 2(a)(1)(B). Further, pursuant to Section

---

[1] At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding'" *Levi Strauss & Co v Sunrise Int'l Trading Inc*, 51 F 3d 982, 985 (11th Cir 1995) (quoting *Asseo v Pan American Grain Company*, 805 F 2d 23, 26 (1st Cir 1986))

13(b) of the CEA, 7 U S.C § 13c(b), Edwards is liable for every violation of Lake Dow/CET and its employees as he is the controlling person of Lake Dow/CET

1. **Section *4o*(1) of the Act**

Section *4o*(1) of the Act, in two provisions, broadly prohibits fraud, deceits and misrepresentations by CPOs, CTAs and their APs  Section 4o(1)(A) of the Act makes it unlawful for a CPO, CTA or their APs to employ any device, scheme or artifice to defraud any participant or prospective participant by use of the mails. Section 4o(1)(B) of the Act makes it unlawful for a CPO, CTA or their APs to engage in any transaction, practice or course of business that operates as a fraud or deceit upon any participant or prospective participant by use of the mails. These sections apply to all CPOs, CTAs and their APs whether registered, required to be registered, or exempted from registration  *See* Commission Regulation 4.15, 17 C.F.R. § 4 15; *CFTC ex rel Kelley v  Skorupskas*, 605 F  Supp  923, 932 (E D. Mich  1985).  These sections apply to all CPOs, CTAs and their APs whether or not the fraud occurs in connection with futures or options transactions. *See Slusser*, ¶ 27,701 at 48,306

Section 4o(1) does not expressly require "knowing" or "willful" conduct as a prerequisite for establishing liability  In this regard, the Commission has held "[a]lthough scienter must be proved to establish a violation of section 4b and section 4o(1)(A), it is not necessary to establish a violation of section 4o(1)(B)."

*In re Kolter*, [1994-1996 Transfer Binder] Comm. Fut. L Rep. (CCH) ¶ 26,262 at 42,198 (CFTC Nov 8, 1994) (aff'g grant of summary disposition) The Commission's view accords with a number of federal court decisions, *e g . Messer v E F Hutton & Co* , 847 F.2d 673, 678-79 (11th Cir. 1988)

CPOs and CTAs have a fiduciary relationship with their participants and clients *Weinberg v NFA,* [1986-1987 Transfer Binder] Comm Fut. L. Rep. (CCH) ¶ 23,087 at 32,219 (CFTC June 6, 1986) (CPO "held fiduciary relationships in soliciting and advising commodity clients and in handling the money of commodity pool participants"). The fiduciary nature of the relationship sets the bar of duty and loyalty that pool operators owe to their clients at a very high level.[4] The Commission has cited approvingly the Black's Law Dictionary definition that one acts in a "fiduciary capacity" to another person "as to whom he stands in a relation *implying and necessitating great confidence and trust* on the one part and *a high degree of good faith* on the other part . . ." *Aronow v First National Monetary Corp* , [1984-1986 Transfer Binder] Comm. Fut. L. Rep (CCH) ¶ 22,282 at 29,429

---

[4] Under common-law principles, a fiduciary relationship ¨ imparts a position of *peculiar confidence placed by one individual in another* A fiduciary is a person with a duty to *act primarily for the benefit of another* A fiduciary is in a position to have and exercise, and does *have and exercise influence over another* A fiduciary relationship implies a condition of *superiority of one of the parties over the other* ¨ Rajala v Allied Corp , 919 F 2d 610, 614 (10th Cir 1990), quoting Denison State Bank v Madeira, 230 Kan 684 691, 640 P 2d 1235, 1241 (Kan 1982) (emphasis in the original) See also Richardson Greenshields Securities, Inc v Mui-Hin Lau, 693 F Supp 1445 1456 (S D N Y 1988) ( A fiduciary relationship is one founded upon trust or other confidence reposed by one person in the integrity and fidelity of another ¨), quoting DiMaio v State of New York, 135 Misc 2d 1021, 517 N Y 2d 675, 678 (1987), City of Harrisburg v Bradford Trust Co , 621 F Supp 463, 473 (M D Pa 1985) ("A fiduciary relationship 'arises whenever a trust, continuous or temporary, is specially reposed in the skill or integrity of another ¨"), quoting Consolidated Oil and Gas, Inc v Ryan, 250 F Supp 600, 604 (W D Ark 1966). aff'd. 368 F 2d 177 (8th Cir 1966)

n.4 (CFTC July 13, 1984), *citing* Black's Law Dictionary, 5th ed , 1979, at 564 (emphasis added). And the federal courts have concluded that Congress intended to hold fiduciaries to "a higher standard of care" under the CEA. *First National Monetary Corp v Weinberger and CFTC*, 819 F 2d 1334, 1342 (6th Cir. 1987), *citing CFTC v Savage*, 611 F 2d at 285.

In *Klatt v International Trading Group*, ¶ 20,636 at 22,598, the Commission stated.

> It is a well-settled principle of securities law that it is the duty of a person who holds a fiduciary relationship to another person to make full disclosure of all material facts regarding the transaction between the parties *SEC v Capital Gains Research Bureau, Inc* , 375 U S 180, 194 (1963) In the Commission's view, this proposition is no less applicable to the commodities field. Indeed, given the volatility and intricacy of the commodity market mechanisms, such a rule is an absolute necessity.

*Accord, In re Commodities International Corp* , [1996-1998 Transfer Binder] Comm. Fut. L Rep (CCH) ¶ 26,943 at 44,566 (CFTC January 14, 1997) (clients of registered CPO and CTA "were subjected to misleading material information from an entity that owed them a duty of complete and accurate disclosure")

## 2. Lake Dow/CET's and Edwards's Conduct Violated Section 4*o*(1) of the Act

As set forth above, Lake Dow/CET is a registered CPO and CTA, and Edwards is a registered AP of Lake Dow/CET Edwards' material misrepresentations and omissions, which took place through the use of the mails or

interstate commerce, constituted schemes to defraud pool participants and also operated as frauds and deceits upon those individuals. The primary boundary on the breadth of Section $4o(1)$ is simply that of materiality. A charge of violating the "operates as a fraud or deceit" prohibition of Section $4o(1)(B)$ is likely to stand or fall on the question of whether the fact misrepresented or withheld was material. A representation or omission is "material" if a reasonable investor would consider it important in deciding whether or not to make an investment. *R J Fitzgerald & Co*, 310 F.2d at 1329. *Saxe v E F Hutton & Co, Inc*, 789 F 2d 105, 109 (2nd Cir. 1986).

As set forth above, Edwards, acting as an agent of Lake Dow/CET, falsely represented to actual and prospective participants and clients, via account statements and solicitation documents, the profitability of the Aurora Funds and the value of assets Lake Dow/CET managed. Such misrepresentations are material and violate Section $4o(1)$ of the Act Misrepresentations of profit are material statements that violate the anti-fraud provisions of the Act. *R J Fitzgerald & Co*, 310 F.3d at 1329-1330 (misrepresentation of profit are material), *CFTC v U S Precious Metals Depository Co*, 468 F.Supp 1149, 1160 (S.D.N.Y. 1979) ("glowing" representations concerning market expectations and likelihood of profit are misrepresentations regarding profitability of investment).

Edwards, acting as an agent of Lake Dow/CET, failed to disclose material facts to actual and prospective commodity pool participants and clients Edwards failed to disclose the fact that the purported rates of return on account statements were based upon Edwards "eyeballing" and estimating Lake Dow's/CET's trading results. *CFTC v Skorupskas*, 605 F Supp. 923 (E. D Mich 1985) (issuing false monthly account statements to pool participants violates Section 4b of the Act).[5] *Psimenos v E F Hutton & Co, Inc.*, 722 F 2d 1041, 1043-44 & n.5 (2nd Cir. 1983) (material misrepresentations about the nature of an organization, the quality of staff and the type of trading the funds would be used for can violate the Act) Edwards also failed to disclose that he was named as a defendant in an action filed by the Commission alleging fraud. In fact, in signed documents Edwards submitted to a futures commission merchant, Edwards falsely represented that he had not been the subject of an investigation or proceeding by a futures or securities regulatory or self-regulatory body *SEC v TLC Investments and Trade Co*, 179 F.Supp.2d 1149, 1153 (C D. Cal. 2001) (granting summary judgment for the SEC where defendant had, among other things, failed to disclose a prior conviction for tax fraud); *Krauth et al v Executive Telecard, Ltd*, 1996 WL 29420, *2 (S.D.N.Y 1996) (defendant corporation's failure to inform investors that one of its directors had been convicted of securities fraud was material). *CFTC v Wall*

---

[5] Misrepresentations that violate Sections 4b of the Act also violate Section 4o(1) *Skorupskas*, 605 F Supp at 932-33

*Street Underground,* 281 F. Supp 2d 1260, 1270 (D. Kan. 2003) (court determined

that failure to inform customers of defendants' mail and wire fraud conviction in

connection with a misappropriation of investor funds was a material fact and its

omission violated 4o of the Act); and *SEC v TLC Investments and Trade Co* , 179

F.Supp 2d 1149, 1153 (C.D Cal 2001) (granting summary judgment for the SEC

where defendant had, among other things, failed to disclose a prior conviction for

tax fraud)

    Because Edwards engaged in the violative conduct while acting within the

scope of his employment with Lake Dow/CET, that entity is liable for his conduct

pursuant to Section 2(a)(1)(B) of the Act Under Section 2(a)(1)(B) of the Act,

strict liability is imposed upon principals for the actions of their agents [6] *Rosenthal*

*& Co v CFTC*, 802 F 2d 963, 966 (7th Cir. 1986), *Dohen-Ramirez & Wellington*

*Advisory, Inc v CFTC*, 837 F 2d 847, 857-58 (9th Cir. 1988).

## D.    Lake Dow/CET and Edwards Willfully Concealed Material Facts from the NFA

    Section 9(a)(4) of the Act makes it unlawful for

> "Any person willfully to falsify, conceal, or cover up by
>
> any trick, scheme, or artifice a material fact, make any false,
>
> fictitious, or fraudulent statements or representations, or make

---

[6] Section 2(a)(1)(B) of the Act and Regulation 1 2 provide, in pertinent part "The act, omission, or failure of any official, agent, or other person acting for an individual, association, partnership, corporation or trust within the scope of his employment or office shall be deemed the act, omission or failure of such individual, association, partnership, corporation, or trust as well as of such official, agent or person "

or use any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry to a registered entity , board of trade. or futures association designated or registered under this Act acting in furtherance of its official duties under this Act "

Edwards willfully concealed the existence of at least eleven investors that invested funds directly into Lake Dow/CET as opposed to the Aurora Funds As a registered futures association, the NFA must "establish and maintain a program for the protection of customers…" and "prevent fraudulent and manipulative acts and practices".  See Section 17 (b)(7) of the Act, 7 U S C  § 21(b)(7) (2002). and Commission Regulation 170.5, 17 C F.R  § 170.5 (2004)  In furtherance of its official duties under the Act, the NFA requested names, documentation and other information from Edwards relating to all investors with funds managed by the Defendants, not just investors in the Aurora Funds.  Edwards concealed from the NFA for thirty days the existence of a group of investors that invested directly into Lake Dow/CET.  Edwards' failure to identify the eleven  Godbee clients was willful  As noted above, Edwards has had conversations with Godbee regarding Godbee's clients' investment.  Thus, he should have been aware of the existence of these individuals, even if he has not maintained books and

records as required by Commission regulations, such as account opening documents signed by these investors. Further, the omitted eleven Godbee investors deposited $693,000 with Lake Dow/CET in early 2005, an amount significant enough to be noticed by Edwards and recent enough to be recalled by him. Further, Edwards issued account statements to these eleven investors as recently as June 30, 2005, which evidences the fact that he was aware of their existence at least three months prior to failing to disclose their identity to the NFA.

The identities of these investors was a material fact to the NFA in conducting its duties under Act because information about these investors would assist the NFA in determining whether Edwards or Lake Dow/CET have misappropriated investor funds. *See CFTC v Muller,* 570 F.2d 1296 (5th Cir 1978) (misappropriation of client funds violates the Act). Edwards's willful concealment of a material fact from the NFA, while the NFA was acting in furtherance of its duties under the Act, violated Section 9(a)(4) of the Act. Because Edwards was an agent of Lake Dow/CET and was acting within the scope of his employment in violating Section 9(a)(4) of the CEA, 7 U.S C § 13(a)(3), Lake Dow/CET is liable for Edwards' conduct pursuant to Section 2(a)(1)(B) of the CEA. 7 U S.C. § 2(a)(1)(B)

**E.** **Failure to submit required Audit Reports in Violation of Commission Regulation 4.22(c)**

Commission Regulation 4 22(c) provides that "each commodity pool operator registered or required to be registered under the Act must distribute an Annual Report to each participant in each pool that it operates. and must file a copy of the Report with the National Futures Association, within 90 calendar days after the end of the pool's fiscal year...". As explained above, Lake Dow/CET failed to provide any such report to the NFA in at least 2003 and 2004 As explained below, because Edwards is the controlling person of Lake Dow/CET, he is liable for Lake Dow/CET's violations of Commission Regulation 4 22(c) pursuant to Section 13(b) of the Act

**F.** **Edwards is Liable as a Controlling Person for the Violations of Lake Dow/CET**

A defendant who possesses directly or indirectly the power to direct or cause the direction of the management and policies of an entity may be liable as a controlling person of that entity under Section 13(b) of the Act,[7] provided that the defendant either knowingly induces, directly or indirectly, the violative acts or fails

---

[7] Section 13(b) of the Act provides. in pertinent part

[a]ny person who directly or indirectly controls any person who has violated th[e] Act or any of
*the rules, regulations or orders issued pursuant to th[e] Act may be held liable for such violation* in
any action brought by the Commission to the same extent as such controlled person
[provided] that the controlling person did not act in good faith or knowingly induced, directly or
directly the act or acts constituting the violation

to act in good faith. *Monieson v CFTC*, 996 F.2d 852, 858 (7th Cir 1993) The statute is construed liberally, and some indirect means of discipline or influence short of actual direction is sufficient to find liability as a controlling person *Id* at 859

To establish liability under Section 13(b), the Commission must show both (1) control and (2) lack of good faith or knowing inducement of the acts constituting the violation. *In re First National Trading Corp*, [1992-1994 Transfer Binder] Comm Fut. L. Rep. (CCH) ¶ 26,142 41,787 (July 20, 1994) It is the power to control that matters, not whether the power is exercised by actually participating in or benefiting from the illegal acts. *Id* In this instance, Edwards not only had the power to control the daily operations of Lake Dow/CET, he did so.

During a conversation on September 6, 2005 between a NFA representative and Edwards, Edwards stated that he was the sole owner of Lake Dow/CET Edwards is the only registered individual associated with Lake Dow in official Commission registration documentation. As Lake Dow/CET's controlling person, Edwards has sole authority to make financial decisions relating to the Aurora Investment Fund assets. In Aurora Investment Fund offering documents, Edwards is described as president and director of trading for the fund. In quarterly statements sent to investors Edwards is identified as the contact person for

investors wishing to redeem assets. In addition, Edwards is the sole signatory on opening account documentation for all known Aurora Investment Fund trading accounts.

Edwards himself made the fraudulent misrepresentations and omissions, concealed material facts from the NFA, and signed the application to the FCM with false information  All of this supports the conclusion that he had actual knowledge of the conduct violating the Act  Therefore, Edwards was the controlling person of Lake Dow/CET, and as the controlling person, Edwards is also liable for all of Lake Dow/CET's conduct  *See In re Apache Trading Co* , [1990-1992 Transfer Binder] Comm Fut.L Rep. (CCH) ¶ 25,251 at 38,795 (CFTC Mar. 11, 1992); *see also Spiegel*, ¶ 24,103 at 34.768 (respondent was founder, president, sole shareholder and sole authorized signatory, and possessed ultimate authority to hire and fire).

## V.   CONCLUSION

For the foregoing reasons, the Commission respectfully requests that this Court grant Plaintiff's motion for an *ex parte* statutory restraining order and an order requiring Defendants to show cause why a preliminary injunction should not be issued

Respectfully Submitted,

_____

Laura Bonander (Georgia Bar No. 696541)
Assistant United States Attorney
600 U.S. Courthouse
75 Spring Street, S W
Suite 600
Atlanta, Georgia 30303
(404) 581-6000 telephone
(404) 581-6181 facsimile

_____

Lael E. Campbell (*pro hac vice*)
Tracey Wingate (*pro hac vice*)
John W. Dunfee (*pro hac vice*)
U S Commodity Futures Trading
Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581
(202) 418-5000 telephone
(202) 418-5538 facsimile


Attorneys for Plaintiff


Dated:  October 19, 2005

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1B

I hereby certify that the foregoing MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR *EX PARTE* STATUTORY
RESTRAINING ORDER AND ORDER AUTHORIZING EXPEDITED
DISCOVERY was prepared using Times New Roman, 14 point.

Lael E. Campbell



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COMMODITY FUTURES
TRADING COMMISSION,

Plaintiff,

v

LAKE DOW CAPITAL LLC a k a
CLIFFORD, EDWARDS AND
TAYLOR, LLC, and
TY EDWARDS

Defendants

05 Civ

 **1 05 - CV 2709**

Memorandum in Support of
Plaintiff's *Ex Parte* Motion to
Appoint Temporary Receiver

Pursuant to Section 6c of the Commodity Exchange Act ("Act"), 7 U S C. § 13a-1 (2002), and Rule 66 of the Federal Rules of Civil Procedure, Plaintiff Commodity Futures Trading Commission ("Commission"), has moved for the appointment of a Temporary Receiver in order to administer this case by marshalling assets and records, locating and communicating with the customers of Defendants Ty Edwards ("Edwards") and Lake Dow Capital LLC a k a Clifford, Edwards and Taylor, LLC ("Lake Dow/CET"), performing a forensic accounting to determine the amounts due to each customer, and processing claims  In support of this Motion the Commission states as follows

1.     Section 6c(a) of the Act, 7 U S C § 13a-1(a), empowers the United States District Court to appoint a temporary receiver to administer an order granted under Section 6c(a) of the Act, and perform such other duties as the Court may deem appropriate [1]

2     Plaintiff Commission has filed a Motion for Statutory Restraining Order with Asset Freeze pursuant to Section 6c(a) of the Act, which, among other things, moves for an Order freezing the assets of Defendants Lake Dow/CET and Edwards, granting the Commission leave to take expedited discovery, granting the Commission access to the books and records of the Defendants, and ordering the Defendants to provide the Commission with an accounting of assets ("Freeze Order")

3     The Commission believes at least 62 customers have made combined investments with the Defendants in excess of $20,000,000   At this time there is a reported $18,414,106 90 in the Defendants' trading accounts.  The significant amount of funds in this case is coupled with significant bookkeeping and accounting issues   The Defendants have not been fully cooperative with the

---

[1] Section 6c(a) of the Act, 7 U S C § 13a-1(a), provides, in pertinent part  "[N]o restraining order (other than a restraining order which prohibits any person from destroying, altering, or disposing of, or refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records or other documents or which prohibits any person from withdrawing, transferring, removing, dissipating, or disposing of any funds, assets, or other property and other than an order appointing a temporary receiver to administer such restraining order to perform such other duties as the Court may consider appropriate) or injunction for violation of the provisions of this Act shall be issued *ex parte* by said Court "

National Futures Association in providing records and documentation relating to all the Defendants' customers and the amounts invested. By his own admission, Edwards stated to the NFA that customer account statements were not generated based upon financial records, but by Edwards "eyeballing" and estimating customer account values.

4.     It is necessary to appoint a Temporary Receiver in order to locate and communicate with the customers, perform a forensic accounting to determine the amounts due to each customer, and process claims   Due to the apparent bookkeeping and accounting issue in this case, a Temporary Receiver that is capable of handling complex forensic accounting is necessary

5     The Commission recommends the appointment of Gregory Hays of Hays Financial Consulting, LLC ("Hays") as Temporary Receiver in this case Hayes. who is located here in Atlanta, has been managing major bankruptcy and fraud investigation cases for the past 15 years, and has served in many fiduciary capacities, including Temporary Receiver in a prior Commission case. *See* Attachment A, Hays's cover letter and resume. In addition, Hays has 5 certified public accountants on his staff, making him and his firm well-qualified to handle the forensic accounting challenges presented by this case.

Wherefore, the Commission respectfully requests that the Court enter the proposed provisions of Part IV of the Freeze Order appointing Gregory Hays of Hays Financial Consulting, LLC, as Temporary Receiver to administer this case.

Dated: 10/19/05

Respectfully submitted,

Laura Bonander (Georgia Bar No 696541)
Assistant United States Attorney
600 U S Courthouse
75 Spring Street, S W.
Suite 600
Atlanta, Georgia 30303
(404) 581-6000 telephone
(404) 581-6181 facsimile

Kael E Campbell *(pro hac vice)*
Tracey Wingate *(pro hac vice)*
John Dunfee *(pro hac vice)*
U.S. Commodity Futures Trading
Commission
Three Lafayette Centre
1155 21st Street, N W.
Washington, D.C 20581
(202) 418-5000 telephone
(202) 418-5538 facsimile

## CERTIFICATE OF COMPLIANCE WITH L.R. 5 1B

I hereby certify that the foregoing MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION TO
APPOINT A TEMPORARY RECEIVER was prepared using Times New Roman.
14 point font

ael E Campbell

**Hays Financial Consulting, LLC**
Atlanta Financial Center
3343 Peachtree Road, N E
East Tower, Suite 750
Atlanta, GA 30326-1429

Direct Dial  (404) 926-0051          ghays@haysconsulting net          Fax  (404) 926-0055

September 30, 2005

Ms  Tracey Wingate
Mr  Lael Campbell
Federal Trade Commission
Three Lafayette Center
1155 21st Street , NW
Washington, DC  20581

**RE:    Commodities Futures Trading Commission**
**         Appointment of Receiver**

Dear Ms  Wingate and Mr Campbell

Thank you for the opportunity to be considered to serve as the Receiver in an action to be brought
by the Commodities Futures Trading Commission ( 'CFTC ') From our brief discussion it appears
that you need a receiver with staff experienced in fraud investigations, fund tracing and forensic
accounting and my we have the experience and accounting staff to serve as the Receiver in this
matter

Hays Financial Consulting, LLC is comprised of analysts, investigators, and accountants that have
worked on many major enforcement actions brought by various federal agencies  I believe that the
combined talent of our professionals, coupled with our experience and investigative techniques,
makes us uniquely qualified to undertake this engagement

**The Team**

*Receiver*  If selected, I would serve as Receiver and manage the case  I am a Certified Turnaround
Professional (CTP) and a Certified Insolvency and Restructuring Advisor (CIRA) I serve in many
fiduciary capacities such as Chapter 11 trustee, Chapter 7 trustee, receiver, special master,
liquidating trustee and assignee  I have twenty-five years of business experience and have been
managing major bankruptcy and fraud investigation cases for the past fifteen years

I have worked closely with investigators from the SEC, IRS  FBI, CFTC, FTC and other regulatory
and law enforcement agencies  I have taught several seminars on fraud investigation
and fund tracing techniques, including presentations to the National Association of Certified Fraud
Investigators and the Association of Insolvency and Restructuring Advisors  I also served on the
board of directors of the Georgia Chapter of Certified Fraud Examiners  Attached as Exhibit  A ,
is a copy of my Curriculum Vita

*Receiver's Counsel* If appointed, I would need to employ counsel and I have employed many law firms in the Atlanta area I currently employ several national firms including McKenna, Long Aldridge, Troutman Sanders, LLP, Womble, Carlyle, Sandridge and Rice and Kilpatrick Stockton, LLP In addition, I employ several less expensive local firm that have significant experience in cases involving securities fraud The decision of who would be selected as counsel would be made after I have a better understanding of the case and know who represents the defendants From my initial understanding, this appears to be more of an accounting case and may not required a great deal of legal work

*Forensic Accountants, Investigators and Asset Managers* If appointed, I will employ my firm Hays Financial Consulting, as forensic accountants, investigators, asset managers and liquidators Attached as Exhibit B" is a profile of Hays Financial Consulting, LLC that describes our capabilities and includes biographical information on our consulting staff The firm consists of professionals in finance, tax, accounting, fraud investigation, asset recovery, asset liquidation, human resources and technology thereby providing a broad spectrum of consulting services Most of our work is in bankruptcy and receivership situations We are able to take control of business operations quickly preserve records, identify, recover and liquidate assets, prepare financial reports and tax returns terminate benefit plans and work with legal counsel to conduct discovery, prosecute claims and report to the court regarding the progress and administration of the receivership

We have an information technology specialist on our team who is responsible for recovering data and providing access to electronic information required by other consultants and parties of interest We use sophisticated software that recovers erased files from hard drives which is important in the investigation of fraudulent activity We undertake forensic investigation of computers as may be necessary in pursuit of recovery and litigation support Reviewing erased e-mail messages and computer files may be important in the investigation of possible D&O claims, tracing of assets, or other litigation claims

We have five CPA's on staff and three Certified Fraud Examiners (CFE) One of our CPA's, Mr Pennington, has a great deal of experience testifying on accounting and securities matters and was recommended to us by securities counsel for whom he had served as an expert witness Mr Pennington would make an excellent witness in this case

## Receiver and Special Master Experience

I currently serve as Receiver and Special Master in SEC enforcement actions and served as the principal fraud investigator in many major enforcement actions I have been involved in the following major fraud cases

SEC v Mobile Billboard of America I currently serve as the Receiver in the United States District Court in the Northern District of Georgia for six entities that were an $80 million Ponzi scheme I was appointed in September 2004 and I am currently investigating claims against third parties including sale agents accountants and counsel to the defendants David Dantzler of Troutman Sanders LLP represents me as the Receiver in this case

SEC v. J. Scott Eskind   The SEC brought this enforcement action and I was appointed Special Master in February 2004  I liquidated the assets of the defendant and am currently closing the case and plan a distribution to creditors  Henry Sewell of McKenna, Long & Aldridge  represents me as the Special Master in this case

SEC v. Telecom Marketing  This enforcement action, though filed in Atlanta, was centered in Las Vegas   The case involved a network of companies that raised in excess of $50 million by selling interests in general partnerships that invested in wireless cable television networks  I served as the principal financial investigator and David Dantzler or Troutman Sanders served as counsel to the Receiver  Together, we took control of the records and other assets of the businesses placed in receivership, traced more than $140 million in transactions through 160 bank accounts  located funds and other assets around the globe, and, worked closely with federal law enforcement authorities, the SEC and the IRS   We prepared an extensive database of transactions and elaborate flow charts tracing funds  We took over 25 depositions and served 63 subpoenas in the process of tracing and recovering funds for investors  We spent a great deal of time in Las Vegas investigating this matter and were required to litigate several issues in the federal court there  Despite having started the case with no business records, we were able to unravel a complex international fraud that resulted in significant recoveries and the turnover of both money and the operating assets to the defrauded investors   In addition, there was a successful criminal prosecution of the principal architects of the scheme

SEC v. Phoenix Telecom  This case involved the receivership of a pay telephone company in Dallas, Texas that raised more than $75 million by selling investments in payphone leases  I served as the principal financial investigator and managed the investigation of the offering, and David Dantzler served as counsel to the Receiver  While the case remains open, we were successful in taking control of a very complicated asset portfolio and combining it with an affiliated company for the benefit of investors

CFTC v. Donald E. James  This case involved the receivership of an individual and affiliated several companies, which defrauded investors in a commodities trading scheme that was a classic ponzi scheme  I served as the financial investigator and David Dantzler served as counsel to the Receiver  We took control of and liquidated assets, traced funds and made a distribution to investors

SEC v. Club Atlanta Travel  This case involved the receivership of a $25 million multi-level marketing operation where we traced funds and prepared the court ordered accounting  I managed the investigation and Henry Sewell served as the Receiver's counsel  In this case, we performed the data analysis, accounting and detailed funds tracing, and filed an accounting report with the SEC and the court that included three 4" binders of data and analysis

SEC v. Wealth International Network  This case involved the receivership of a $14 million fraudulent investment scheme where we traced funds through numerous companies and offshore accounts  I managed the investigation, again working with Henry Sewell, who served as the Receiver's counsel   We recovered funds and we made a significant

distribution to investors We worked closely with SEC's counsel in Washington on this matter

MTB Bank v Cuban Caribbean Shipping Though not a receivership, this case involved a $3 2 million receivable factoring fraud that involved tracing $120 million in transactions through more than 100 bank account David Dantzler and I investigated this case and traced funds and assets David took over 20 depositions in tracing funds and asset through various countries

SEC v International Trading, Inc This was a receivership of a $3 2 million treasure hunt fraud and we traced funds through five foreign countries and resulted in the recovery of assets and a distribution to investors Henry Sewell served as counsel to the Receiver

As these cases demonstrate, we have the financial, investigation and legal team necessary to manage the assets of the Receiver Estate and fully investigate and pursue recovery in this matter

## Investigation Steps

Without knowing more about the specific business operation or the investment opportunity involved in this case, it is difficult to provide a detailed work plan tailored to the specific circumstances that we are likely to confront However, based upon our general experience, we can provide the following overview of how we will likely proceed if appointed.

1  The critical fist step will be to secure all records, documents and electronic data of the Receivership Estate Business records may be in several locations and we would arrange to immediately inspect all know locations for any records We will also capture all electronic data and preserve a working copy for counsel and the CFTC Depending upon the complexity of the systems involved and the cost, we will either handle this directly or retain a local contractor to back up all computers and undertake forensic data recovery on the first day of the Receiver's appointment

2  Assuming that the temporary restraining order provides us with authority to do so, we will immediately freeze all known bank accounts In the *Telecom Marketing* case, we actually hand delivered copies of the Receivership Order to every bank in Las Vegas on the day that the receiver was appointed and, simultaneously, served subpoenas for the production of bank records Over the course of years, we have developed very useful receivership language that the SEC has successfully had included in the order appointing the receiver In the *Telecom Marketing* case, this language proved invaluable in that it allowed us to freeze any funds that we were able to trace as being derived from the investment proceeds

3  Immediately upon being appointed we will take steps to preserve the value of all business assets

4  We will immediately begin an investigation of the principals related entities, and other parties to locate any hidden assets We assume that this case will require a great deal of fraud investigation and funds tracing and attached as Exhibit `D` is a summary of our

investigative techniques in tracing funds. The exhibit describes the process we use to trace funds in fraud cases where we start with little or no records. Also included are examples of several flow charts we developed in other cases used in litigation support to demonstrate the movement of funds

5  We analyze information, including records of law firms or other professionals engaged by the defendants during the course of its operation. You may be interested to know that one of the issues we successfully litigated in Las Vegas during the *Telecom Marketing* case was the receiver's right to step into the shoes of the client with respect to lawyers who had assisted in structuring the scheme. We would review all available documents and consider possible recovery from accountants, professionals, appraisers, lawyers, etc. We would also immediately investigate any D&O insurance and make certain a tail policy is purchased

6  We expect that from the very beginning of the case, our counsel will engage in both informal and formal discovery from both the defendants and third-parties. We have always learned a great deal from the investors in these cases and expect that we may meet with investors to develop leads regarding the location of assets

7  Assuming that we are able to locate assets in the possession of third-parties that represent the proceeds of the investment scheme, we will develop and prosecute a strategy for recovery, including the filing of litigation against appropriate parties

8  In addition to items listed above, the case will involve other recovery items and issues to be addressed. We maintain a standard project list that includes 118 specific duties for the Receiver and is used by our office as a checklist in new cases. The list includes many possible recovery and investigation issues. We would also immediately file the Receivership Order in any jurisdiction in which the Receivership Estate owns assets and, to the extent permitted and necessary, file a lis pendens on real estate holdings to ensure the assets are not transferred

9  Finally, we will develop a claims process and plan of distribution, which will require that all investors complete a claim form and provide a copy of the front and back of any check tendered for an investment in the enterprise. We often find funds that were never deposited directly in the company. In some cases, we have simply returned money to investors on a pro rata basis. In others, we have determined that investors are more likely to maximize their recovery if the assets are managed for their benefit and have developed structures to accomplish this. We would almost certainly consult with investors before making a decision in this regard

## Fees & Costs

With our current limited knowledge of the case, it is difficult to know exactly what legal and forensic accounting talents will be required. However the entire team will make every effort to match the job duty with the person that could manage the task at the lowest possible hourly

My current hourly rate is $275 00 and as I mentioned on the phone, we would staff the job with CPAs, CFE's and financial consultants that have hourly rates that range from $100 00 to $275 00 I anticipate that the expected blended hourly rate would be approximately $175 per hour

### References

I worked with Mark Bretscher of your Chicago office in the case of CFTC v Donald James many years ago I have also worked with several SEC lawyers over the years and suggest that you contact any of the following for a reference

| | |
|---|---|
| Linda Thomsen – Associate Director, Washington, D C | (202) 942-4501 |
| William P Hicks - District Trial Counsel Atlanta, GA | (404) 842-7675 |
| Alex Rue, Senior Trial Counsel, Atlanta, GA | (404) 842-7616 |
| Edward G Sullivan – Senior Trial Counsel, Atlanta, GA | (404) 842-7612 |

Mr Rue is managing the SEC's investigation in the $80 million Mobile Billboard of America case where I currently serve as Receiver You may also want to take a look at our web site and see reports that I filed in this case Please go to www.haysconsulting.net and click on the Mobile Billboards of America case to see samples of the Receiver s Interim Reports

I would also suggest you contact James C Frenzel, Esq as a reference Mr Frenzel represents me in several cases where I serve as the Chapter 11 trustee including Stewart Finance Company Mr Frenzel may be reached at (404) 266-9961

I appreciate your consideration of my appointment as Receiver and Hays Financial Consulting as accountants to the Receiver We are eager to undertake this engagement If you have questions or would like to discuss this further, please do not hesitate to contact me

Sincerely,

/s

S Gregory Hays
Managing Director

Attachments

**Exhibit "A" Follows**

# S. Gregory Hays, CTP, CIRA
## Hays Financial Consulting, LLC
Atlanta Financial Center
3343 Peachtree Road, N E
East Tower, Suite 750
Atlanta GA 30326-1429

Phone (404) 926-0060          ghays@haysconsulting net          Fax (404) 926-0055

## SUMMARY

Certified Turnaround Professional ("CTP") and Certified Insolvency and Restructuring Advisor ("CIRA") Provide turnaround, workout, asset recovery, liquidation, litigation consulting, forensic accounting and financial consulting services Often serve in fiduciary capacity as bankruptcy trustee, receiver, examiner, assignee, distribution agent liquidation agent, liquidating trustee and special master Experience includes twenty-three years of comprehensive financial management and operations experience in a wide variety of businesses and industries including fourteen years as a consultant managing bankruptcy and receivership cases and investigating fraudulent activity

## EXPERIENCE

### Hays Financial Consulting, LLC - Managing Director
Appointed by the United States Trustee to serve as Chapter 11 trustee in ten business cases four of which were operating businesses Also serve as a Chapter 7 panel trustee Responsible for liquidating assets, recovering receivables, investigating claims, pursuing avoidance actions and managing estates Available to serve as financial consultant or accountant to bankruptcy trustees, committees or companies Develop and implement plans to maximize recovery from financially troubled companies and provide litigation support services

### Bankruptcy Cases
Aero Plastics, Inc – appointed as the CEO of this plastics manufacturing company operating in Chapter 11 in March 2005 The company has annual sales of $60 million and over 200 employees The company is headquartered in Boston, Massachusetts and the manufacturing facility is in McDonough, Georgia The secured creditor required the appointment of a new CEO as a condition to use cash collateral

Apyron Technologies, Inc – appointed as Chapter 11 trustee for this operating business in March 2005 Currently managing the business in Chapter 11 and planning a sale of sale of the debtor

Battle Builders, Inc - appointed as Chapter 7 trustee in September 2004 for this developer of residential homes Held public auction in November 2004 and liquidated $2 1 million inventory including 13 homes, 4 lots and a commercial building

Retailer Z - appointed as Chapter 11 trustee for this operating retail business in April 2004 Operated this retail chain of home goods stores for short period and then conducted liquidation sales Business closed in June 2004 and currently pursuing bankruptcy claims Estimate a 35% distribution to creditors

Integra Holdings, LLC – elected Chapter 7 trustee in April 2004 for this holding company with $7 million in claims Liquidating assets and pursuing recoveries from fraudulent conveyances

PNI Technologies, Inc – appointed as Chapter 11 trustee for this operating group of eight paging companies in March 2004 Arranged a sale of the business and closed the cases

Symbiat f/k/a Computone, Inc – appointed as Chapter 7 trustee in March 2004 for this former public company with $5 5 million in scheduled debts Liquidating all assets

Stewart Finance Company - appointed as Chapter 11 trustee for this operating consumer finance company and related entities in September 2003 The company had 170 employees and over 38 000 consumer loans in 5 states Managed the debtor's operations in Chapter 11, supervise handling of pending litigation with governmental agencies including the SEC, FTC and Georgia Secretary of State Investigated possible reorganization plan and arranged for a sale of the business Currently winding down operations, investigating possible recoveries from debtor's principal and related companies The companies have estimated total debts of over $40 million

Specialty Equipment Rental, Inc – elected as Chapter 7 trustee in May 2003 for this equipment rental business In the process of collecting receivables and liquidating property of the estate

ETS Payphones, Inc – after this company was restructured in bankruptcy appointed to the Board of Directors and the Audit Committee of this pay telephone operating company during 2003 The company had over $400 million in debt that was converted to equity in the court-approved plan of reorganization

Eriah Farms, Inc - appointed as Chapter 11 trustee in February 2003 for this 6 000 acre peanut and cotton farming operation in South Georgia Arranged for the courthouse auction sale of the government guaranteed payments for $1 0 million and auctioned the real property Investigated preferences and fraudulent conveyances Currently preparing a plan of liquidation which will substantively consolidate the estates

Custom Insurance Services, Inc – appointed as Chapter 11 trustee in August 2002 and currently serve as Chapter 7 trustee for this managing general insurance agency, which has $20 million of in-force annual premiums and 26 employees in Georgia, Florida and Texas Operated the business in Chapter 11 and closed in October 2002 Currently finalizing the liquidation of the business

IMS Group, Inc – appointed as Chapter 11 trustee in July 2002 and currently serve as Chapter 7 trustee for this roll-up of electric motor distribution companies with operations in five states In process of liquidating assets, collecting receivables, terminating benefits plans and administering the bankruptcy estate

Film Fabricators, Inc – appointed as Chapter 11 trustee in March 2002 and currently serve as Liquidating Agent pursuant to a confirmed Plan of Liquidation This plastics manufacturing company had plants in Illinois and was headquartered in Atlanta. Georgia The business had annual sales of $28 million in 2001 Currently administering the confirmed Plan of Liquidation

QOS Networks, Inc and related cases – appointed as Chapter 11 trustee in December 2001 and currently serve as Chapter 7 trustee for this telecommunications company that was building a worldwide Internet protocol network investing over $100 million in infrastructure Recovered telecom assets around the country and held a public auction to sell all assets Negotiated a settlement with the landlord to recover funds from a letter of credit Investigating and settled preference claims Investigated possible D&O claim and against the Irish parent company for international telecom assets Currently winding down the case

2

McLain Building Materials, Inc and related cases – appointed Chapter 11 trustee in September 2001 currently serve as Chapter 7 trustee for this building supply company Sold real property, collected receivables, and settled preference claims Estimate a significant distribution to unsecured creditors

Associated Distributors, Inc., West Lumber Company and related cases – appointed Chapter 11 trustee and currently serve as Chapter 7 trustee for this 100-year-old chain of building materials companies that had operations in six southeast states Liquidated assets, sold real properties collected receivables, investigated preferences, researched D&O claim, terminated employee benefits plans, resolved claims and prepared financial reports and tax returns Employed four law firms to handle separate matters, two real estate brokers and a collection agency Managing the final wind down of the debtor Total claims in the cases exceed $40 million

## Receiver, Assignee and Special Master Cases

SEC v Mobile Billboards of America, International Payphone Corp, et al Appointed Receiver in the United States District Court in September 2004 for four companies that raised over $60 million from the sale of investments in mobile billboards Currently operating a payphone business with 2 500 phones and pursuing recover from a third party defendants

SEC v J Scott Eskind, Lorus Investments Inc and Capital Management Funds, LP Appointed Special Master in the United States District Court by Judge Shoob in January 2004 to recover assets and distribute funds to creditors in this investment fraud case

IIS Liquidation Corp – served as Assignee to recover funds and liquidate this company formerly known as Net Certainty Appointed in July 2002

All Star Service, Inc – served as the state court Receiver for a chain of convenience stores in Minnesota Bayview Franchise Mortgage Acceptance Corporation foreclosed on the properties and receivership terminated in April 2002

Bongini-Davis Hair Studio, Inc – served as state court Receiver for a high profile hair salon in Atlanta Georgia with annual sales of $1 5 million Negotiated a resolution of a partnership dispute while managing the business Case closed in July 2002

## William G. Hays & Associates, Inc. - Executive Vice President

Financial consultant to fiduciaries in bankruptcy and receivership cases from 1991 to 2001 Consulted, developed and implemented plans to maximize recovery from financially troubled companies Managed insolvent companies, investigated fraud, liquidated assets, and provided litigation support Prepared financial analyses and researched complex financial situations Identified potential recovery to maximize recovery for creditors Worked closely with counsel to pursue recovery through litigation Simultaneously handled multiple financial consulting engagements and managed staff of professionals Clients included international financial institutions and major law firms Engagements included the following

## Bankruptcy Financial Consulting and Administration

RDM Sports Group, Inc - served as principal accountant and financial consultant to the Chapter 11 trustee for this manufacturer and wholesaler of sporting goods equipment that had operations in Alabama, Georgia, Kentucky Mississippi and Illinois Investigated and pursued recoveries through asset liquidation and provided litigation support to counsel for Trustee Investigated and pursued avoidance actions and worked closely with counsel to unsecured creditors committee and bondholders committee

The Gilbert & Bennett Manufacturing Company, Inc – managed the Chapter 11 liquidation of this wire products manufacturing company with headquarters in Connecticut and operations in Georgia, North Carolina, Illinois and Michigan Hays & Associates initially served as the Responsible Person for the debtor and after liquidation, served as the financial consultant to the Trustee David W Cranshaw Provided litigation support services to trustee and managed claims administration

Flexel, Inc – managed the final stages of the Chapter 11 liquidation of a cellophane manufacturing business in Indiana Hays & Associates served as the Chapter 11 Liquidating Agent Operated plant for a period then closed facilities liquidated assets and made distribution to creditors

International Trading, Inc - investigated and traced $3 2 million through five foreign countries in the Chapter 11 case of International Trading, Inc. an alleged gold and diamond mining company

World Bazaar Franchise Corporation - managed the Chapter 11 bankruptcy liquidation of an importer and retailer of furniture and accessories

## Receivership Administration and Consulting
Phoenix Telecom, LLC - served as financial consultant to the Receiver for an operator of pay telephones located in Dallas, Texas The company raised $75 million from the sale of pay telephones to investors

Blue Sky Petroleum, Inc - served as the principal financial consultant in the receivership of a chain of 32 convenience stores located in Atlanta, Georgia Managed operations a period then developed a plan, sold the business and made a 48% distribution to unsecured creditors

Telecom Marketing, Inc - managed $36 million fraud investigation in the receivership of a wireless cable television company located in Las Vegas, Nevada Traced funds through 160 bank accounts involving over $140 million in transactions Traced investment proceeds overseas and assisted counsel in recovery of funds for investors

Club Atlanta Travel, Inc - investigated a multi-level marketing company in receivership Functioned as the principal financial consultant and prepared court-ordered accounting of $25 million fraudulent securities offering

Wealth International Network, LLC - investigated and managed recovery from a $14 million investment scheme of a group of financial advisory firms

## Forensic Accounting, Litigation Support and Financial Consulting
Investigated a $3 2 million receivable factoring case in an international shipping business Traced funds through 100 bank accounts and over $120 million in transactions Assisted counsel in the research and analysis of a RICO complaint and participated in the depositions Testified at criminal court hearings

Investigated a $36 million bank fraud case involving automobile transactions Traced funds and assisted Trustee in recovery

Prepared valuation of a $45 million real estate development Evaluated the feasibility of the Plan of Reorganization Prepared financial projections that were filed with the court as the expert's report

Prepared valuation analysis of a $50 million receivable portfolio in a Chapter 11 liquidation

Restructured and sold a $30 million mortgage portfolio of 500 condos and co-ops in New York

## Coca-Cola USA (1986 to 1990)

**Manager, Purchasing and Distribution, Coca-Cola Refreshment Systems** – (1990) Managed suppliers and wholesalers Purchased and imported inventory from international suppliers Served as account manager Developed and implemented distribution strategies Investigated legal issues with counsel and resolved problems with financially troubled companies

**Operations Manager, BreakMate Development Group** - (1989) Managed finance and operations Responsible for financial management and planning, wholesaler relations, distribution and administration Prepared valuation analysis of acquisition Developed long-range plans

**Wholesaler Programs Analyst, Fountain Sales Department** - (1988) Evaluated financial impact of new production, packaging and distribution strategies Developed agency manufacturing strategy Managed wholesaler relationships and implemented new programs

**Principal Financial Analyst** - (1987) Prepared annual budget and provided analytical support to profit centers Prepared financial presentations for senior management Evaluated sale of a business segment Developed pricing model

**Senior Financial Analyst** - (1986) Provided analytical support to the CFO and other senior management on financial and operational issues Served as an internal financial consultant providing analytical support and technical financial expertise

## Cox Cable Communications, Inc. (1981 to 1985)

**Senior Investment Analyst** - (1985) Prepared the long-range financial plan for cable television operations Developed the software, managed the planning process and presented the plan to senior management Developed plans for shareholder buyouts and new investments

**Financial Analyst** - (1983 to 1984) Prepared quarterly forecasts, budgets, and long-range plans Prepared monthly financial reports and operations analyses Conducted seminars on financial planning and analysis Implemented new accounts receivable and collection procedures

**Assistant Business Manager** - (1981 to 1982) Assisted in managing cable television operations Responsible for financial analysis accounting, insurance, and data processing for a division that included 32 cable TV operations Implemented operations audit program Conducted seminars

## EDUCATION

**Master of Business Administration,** Finance *Georgia State University* Atlanta Ga , 1981

**Bachelor of Business Administration,** Finance. *Stetson University* Deland, Florida. 1979

## PROFESSIONAL DESIGNATIONS

Certified Turnaround Professional ( CTP ) The Turnaround Management Association has over 6 000 members and only approximately 250 have achieved the CTP designation There are only 16 CTP s in Georgia

Certified Insolvency & Restructuring Advisor ( CIRA ) The Association of Insolvency & Restructuring Advisors has over 2 500 members and only approximately 600 financial professionals have achieved the CIRA designation There are only 22 CIRA s in Georgia

## PROFESSIONAL PRESENTATIONS

Rocks to Roll  60 Rocks to Look Under in a Forensic Investigation in Bankruptcy Cases – a presentation on forensic accounting made at the Association of Insolvency & Restructuring Advisors annual conference in Dallas, Texas in June 2004

'Reasons for Business Failure from the Hindsight of a Bankruptcy Trustee" – a discussion regarding the causes of business failure presented to the Institute of Management Accountants in January 2004

Assignments for Benefit of Creditors" - a presentation to the Georgia Bar Bankruptcy Section in January 2003

'Follow the Greenback Road" - a presentation on following the money trail in fraud investigations  Presented to the Association of Certified Fraud Examiners in New Orleans Louisiana at their National Convention in 1998

'Role of Receiver in Recovering Funds from Pyramid Schemes" – a presentation at the Federal Trade Commission s conference on Pyramid schemes in 1997

Following the Cash Trail  – a presentation to the Georgia Chapter of Certified Fraud Examiners at their annual conference in 1995

"Fraud and Bankruptcy  – an introduction to fraud and bankruptcy issues presented to Institute of Management Accountants in 1993

## PROFESSIONAL ASSOCIATIONS

Association of Insolvency and Restructuring Advisors
American Bankruptcy Institute
Georgia Chapter Certified Fraud Examiners, former Board Member
National Association of Bankruptcy Trustees
National Funding Association
Region 21 Trustee Association
Turnaround Management Association